**Deshawn WHITE, Ebony Griffin, Atiya King, and Arisha McRae, Plaintiffs,**

v.

**DENNY'S INC., a California corporation, Flagstar Corporation, a Delaware corporation, Flagstar Companies, Inc., a Delaware corporation, Denny's Holdings, Inc., a New York corporation, Curtis Hain, individually and as agent for Denny's, Susan La Morte, as agent for Denny's, Cynthia Fore, individually and severally, and Rick Grauderick, individually and severally, Defendants.**

**Civil Action No. 95 N 1839.**

United States District Court, D. Colorado.

March 21, 1996.

C. Lamont Smith, Greg Ray, Smith & Schaffer, P.C., Denver, CO, for Plaintiffs.

Jay S. Horowitz, Philip L. Gordon, Krendl Horowitz & Krendl, David J. Bruno, Janice K. Hollenbeck, Bruno, Bruno & Colin, P.C., Denver, CO, for Defendants.

## MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

This is race-discrimination case. Plaintiffs assert ten claims for relief arising out of an incident which occurred on March 25, 1995, at a Denny's restaurant located at 6699 Leetsdale Drive, Denver, Colorado. Plaintiffs, four nineteen-year-old, African-American women, allege that defendants discriminated against them in violation of federal and state laws by: (1) offering preferential seating to white customers; (2) permitting white customers to make slanderous racial epithets to plaintiffs without recourse; and (3) detaining plaintiffs in response to their protests against the discriminatory treatment they received while attempting to eat at Denny's. Three of the corporate defendants move for dismissal based upon lack of personal jurisdiction and improper service. Two of the individually named defendants (both of them Denny's employees) move for summary judgment on each of plaintiffs' ten claims for relief,[1] and Plaintiffs Arisha McRae and Deshawn White move for summary judgment on two state-law claims. The matter is now before the court on the following motions: (1) "Defendant Curtis Hain's Motion for Partial Summary Judgment" filed December 13, 1995; (2) "Defendant Susan La Morte's Motion for Partial Summary Judgment" filed December 13, 1995; (3) "Defendants Flagstar Corporation [sic], Flagstar Companies, Inc. [sic] and Denny's Holdings, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(5)" filed December 18, 1995; (4) "Plaintiff's [sic] Motion for Partial Summary Judgment" filed December

27, 1995; and (5) "Defendants Curtis Hain's and Susan La Morte's Motion for Summary Judgment" filed December 27, 1995. Subject matter jurisdiction is based on 42 U.S.C.A. §§ 1331 and 1343 (West 1993).

## FACTS

On March 25, 1995, at approximately two o'clock a.m., plaintiffs entered the Denny's restaurant in question. (First Am.Compl. ¶ 16 [filed Nov. 8, 1995].) Defendant Curtis Hain, Denny's general manager, seated Defendants Cynthia Fore and Rick Grauderick, two white customers, before seating plaintiffs, despite the fact that plaintiffs arrived in Denny's lobby first. (*Id.* ¶¶ 17, 19, 23–24.) Plaintiffs were eventually seated in the same section as Grauderick and Fore, who allegedly began shouting "racially defamatory language that included the use of the word 'niggers' at the plaintiffs." (*Id.* ¶ 31.) After an alleged continuing barrage of Grauderick's racial epithets, an argument ensued between plaintiffs and Grauderick. (*Id.* ¶¶ 33–36.) According to plaintiffs, Hain was aware that Grauderick and Fore started the verbal dispute; nonetheless, according to plaintiffs, Hain responded to the altercation by ordering only plaintiffs to leave the restaurant. (*Id.* ¶¶ 20–21, 23–25, 29–31, 33, 37–39.)

Plaintiffs claim that they also experienced discriminatory treatment by Denny's security guard, Defendant Susan La Morte, an off-duty Denver sheriff. (*Id.* ¶¶ 21, 40.) When Plaintiff McRae attempted to explain her version of the incident to the security guard, La Morte seized McRae's wrist and informed plaintiffs they were all going to jail. (*Id.* ¶¶ 40–41.) Plaintiffs contend they suffered additional physical abuse from Denver police officers who arrived at the restaurant minutes after La Morte apprehended McRae. (*Id.* ¶¶ 45–52.)

The police arrested and detained Grauderick, Fore, and plaintiffs. (*See id.* ¶¶ 47–52.) Grauderick was charged with, and subse-

---

1. The corporate defendants also joined in the motions for summary judgment. (*See* Defs. Denny's Inc., Denny's Holdings, Inc., Flagstar Corporation [sic], and Flagstar Companies, Inc.'s Mot. for Summ.J. [filed Dec. 27, 1995].) On

March 1, 1996, plaintiffs represented in open court that they have not properly served a summons and complaint upon Defendants Rick Grauderick and Cynthia Fore.

quently plead guilty to, trespass, disturbing the peace, and interference with a deputy sheriff. (Defs. Curtis Hain's and Susan La Morte's Reply Mem. in Supp. of Defs.' Mot. for Summ.J. at 7, Ex. B [La Morte's summons and complaint against Grauderick], Ex. C [Grauderick's Order and Deferred Judgment and Sentence] [filed Feb. 22, 1996] [hereinafter "Defs.' Reply"].) Fore was charged with, and subsequently plead guilty to, trespass and disturbing the peace. (Id., Ex. B [La Morte's summons and complaint against Fore], Ex. D [Fore's Order and Deferred Judgment and Sentence].) Plaintiffs McRae and White were charged with assault, interference, and disturbing the peace. (First Am.Compl. ¶¶ 48, 50.) A jury found White and McRae guilty of disturbance of the peace. (Def. Curtis Hain's Mot. for Partial Summ.J., Ex. H [Hr'g Tr. at 264–65] [filed Dec. 13, 1995] [hereinafter "Hain's Mot."].) Plaintiffs Ebony Griffin and Atiya King were charged with disturbing the peace. (First Am.Compl. ¶¶ 51–52.) The record does not reflect the disposition of the charges against Griffin and King.

On July 7, 1995, plaintiffs filed suit against defendants in Denver District Court, alleging the following claims for relief: (1) racial discrimination in violation of Colo.Rev.Stat. § 24–34–601 (1988 & Supp.1995); (2) negligent infliction of emotional distress; (3) intentional infliction of emotional distress; (4) battery; (5) negligence; (6) ethnic intimidation in violation of Colo.Rev.Stat. § 13–21–106.5 (Supp.1995); (7) racial discrimination in violation of 42 U.S.C.A. § 2000a (West 1994); (8) conspiracy to racially discriminate in violation of 42 U.S.C.A. § 1985(3) (West 1994); and (9) violation of plaintiffs' right to make and enforce contracts pursuant to 42 U.S.C.A. § 1981 (West 1994). (Notice of Removal of Defs. Denny's Inc., Flagstar Corp., Flagstar Cos., Inc., Denny's Holdings, Inc., Curtis Hain and Susan La Morte, Ex. A [Compl.] [filed July 21, 1995].) Defendants removed plaintiffs' action to this court on July 21, 1995. (Id.) Plaintiffs' first amended complaint asserts an additional claim for false arrest against defendants. (First Am. Compl. ¶¶ 89–91.) Before turning to the merits of plaintiffs' claims, I consider the jurisdictional and procedural issues raised in certain corporate defendants' motion to dismiss.

### 1. Defendants' Motion to Dismiss

■ Defendants Flagstar Corporation ("Flagstar"), Flagstar Corporation, Inc. ("FCI"), and Denny's Holdings, Inc. ("DHI") argue that plaintiffs' complaint must be dismissed because (1) this court lacks personal jurisdiction over them and (2) plaintiffs failed to make effective service upon FCI and DHI. Additionally, FCI and DHI request attorneys' fees incurred "because of plaintiffs' repeated and inexcusable failure to effect proper service." Defendants cite no law in support of their request for attorneys' fees. Plaintiffs concede that this court lacks personal jurisdiction over Flagstar, FCI, and DHI. Thus, the complaint is dismissed as to those defendants. Plaintiffs contend, however, that an award of attorneys' fees in defendants' favor is inappropriate.

On November 8, 1995, I dismissed plaintiffs' complaint with leave to perfect service as to Defendants Denny's, Flagstar, FCI, and DHI. On November 10, 1995, plaintiffs hired the Bister Agency to re-serve Defendant Denny's by delivering process to Robert Barrett, Assistant General Counsel for Flagstar Corporation, Spartanburg, South Carolina. Mr. Barrett, however, is not an officer or agent for FCI or DHI. On November 27, 1995, Mr. Larry Bogan, a private detective in South Carolina, served a summons and complaint upon Denny's by delivering copies to Ms. Angela Pressley, Mr. Barrett's secretary and an authorized Denny's agent. On December 18, 1995, defendants filed their motion to dismiss FCI and DHI for improper service, as Mr. Barrett assumed that plaintiffs "evidently [were] attempting to serve process on Denny's, Flagstar, [FCI], and [DHI]."

The primary problem with the service of process in this case arises from defendants' misinterpretation of plaintiffs' summons. The proof of service reveals that plaintiffs purported to perfect service only with respect to Defendant Denny's. Moreover, a letter from plaintiffs' counsel to the Bister Agency reveals that plaintiffs intended to re-

serve only Defendant Denny's. Notwithstanding the plain language of the return of service, defendants contend they are entitled to attorneys' fees because plaintiffs did not file their proof of service with this court until December 18, 1995—"the exact date upon which defendants were required to answer the First Amended Complaints [sic] or to file a Rule 12 motion." Defendants argue that plaintiffs should have served Denny's with an "honest summons, i.e., one which did not name Flagstar, FCI, and DHI as defendants."

Rule 4 of the Federal Rules of Civil Procedure requires that a summons "identify the court and the parties, [and] be directed to the defendant." Fed.R.Civ.P. 4(a). The summons at issue in this dispute identifies each named defendant in its caption. Furthermore, the summons was directed to Defendant Denny's, as it was served only upon Denny's registered agent. I find that plaintiffs' summons was sufficient for purposes of rule 4(a). Plaintiffs are not required to bear the financial burden resulting from defendants' misinterpretation of the summons. Accordingly, defendants' request for attorneys' fees is denied.

### 2. Plaintiffs' Federal–Law Claims

Defendants Hain, La Morte, and Denny's move for summary judgment on all of plaintiffs' claims, with the exception of McRae's battery claim. (See Defs. Curtis Hain's and Susan La Morte's Mot. for Summ.J. at 2 n. 2 [filed Dec. 27, 1995] [hereinafter "Hain/La Morte Mot."]; see also Def. Susan La Morte's Mot. for Partial Summ.J. [filed Dec. 13, 1995] [hereinafter "La Morte's Mot."]; Hain's Mot.) Plaintiffs McRae and White move for partial summary judgment on their negligence and negligent infliction of emotional distress claims. (Pls.' Mot. for Partial Summ.J. [filed Dec. 27, 1995] [hereinafter "Pls.' Mot."].) Before turning to plaintiffs' state-law claims, I consider the merits of their federal civil-rights claims in light of defendants' various motions for summary judgment.[2]

**2.** Unless otherwise stated, use of the term "defendants" throughout this order shall refer to

### a. 42 U.S.C.A. § 2000a—Public Accommodation Discrimination

■ Before filing suit under 42 U.S.C.A. § 2000a, plaintiffs are required to give written notice of the alleged act of discrimination to the appropriate state or local agency. See 42 U.S.C.A. § 2000a–3(c) (West 1994) (requiring notice to appropriate agency when state law prohibits discriminatory practices in places of public accommodation); Colo. Rev.Stat. §§ 24–34–601 to 24–34–602 (1988 & Supp.1995) (Colorado law prohibiting discrimination in places of public accommodation). In Colorado, the appropriate state agency is the Colorado Civil Rights Commission. See Colo.Rev.Stat. §§ 24–34–301 to 24–34–307 (1988 & Supp.1995). Plaintiffs concede that they did not file a notice with the Colorado Civil Rights Commission, and they "offer no argument" in response to defendants' motion for summary on plaintiffs' section 2000a claim for failure to exhaust their administrative remedies. (Pls.' Mem. in Opp'n to Susan La Morte's Mot. for Partial Summ.J. at 9 [filed Feb. 8, 1996] [hereinafter "Pls.' La Morte Resp."]; Pls.' Mem. in Opp'n to Curtis Hain's Mot. for Partial Summ.J. at 9 [filed Feb. 8, 1996] [hereinafter "Pls.' Hain Resp."].) Plaintiffs' claim for discrimination in violation of 42 U.S.C.A. § 2000a is accordingly dismissed.

### b. 42 U.S.C.A. § 1981—Discrimination in the Making of Private Contracts

■ Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. See 42 U.S.C.A. § 1981; Patterson v. McLean Credit Union, 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989). In seeking relief under section 1981, plaintiffs must do more than simply invoke their race in the course of a claim's narrative. See Jackson v. Tyler's Dad's Place, Inc., 850 F.Supp. 53, 55 (D.D.C.1994) (citing Bray v. RHT, Inc., 748 F.Supp. 3, 5 [D.D.C.1990], aff'd, 976 F.2d 45 [D.C.Cir. 1992] ) (additional citation omitted). To succeed on their section 1981 claim, plaintiffs

Defendants Hain, La Morte, and Denny's.

must prove intentional discrimination. *See Chauhan v. M. Alfieri Co.*, 897 F.2d 123, 126 (3d Cir.1990).

■ Summary judgment motions in section 1981 cases are governed by the burden shifting provisions established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 255–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). *See Patterson*, 491 U.S. at 186, 109 S.Ct. at 2378; *Chauhan*, 897 F.2d at 126 (citations omitted). Under the *McDonnell Douglas* test, plaintiffs have the initial burden of proving, by a preponderance of the evidence, a *prima facie* case of discrimination. *Patterson*, 491 U.S. at 186, 109 S.Ct. at 2378. The burden is not onerous. *Id.* Once plaintiffs have proven the elements of a *prima facie* case, the burden of production shifts to defendants to articulate, though not necessarily prove, a legitimate, nondiscriminatory reason for the challenged action. *See McDonnell Douglas*, 411 U.S. at 802–03, 93 S.Ct. at 1824; *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 327 (10th Cir.1996) (age discrimination case) (citation omitted); *Hooks v. Diamond Crystal Specialty Foods, Inc.*, 997 F.2d 793, 796 (10th Cir.1993). If defendants articulate a proper basis for their conduct, the burden shifts back to plaintiffs in the third stage of the analysis to prove that defendants' proffered reasons were simply a pretext "for discrimination." *See McDonnell Douglas*, 411 U.S. at 804–05, 93 S.Ct. at 1825; *Marx*, 76 F.3d at 327; *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1379 (10th Cir.1994) (gender discrimination analysis) (citation omitted). Notwithstanding the shifting burden of production, plaintiffs retain the ultimate burden of prov-

ing that the challenged action was the result of intentional discrimination based on an impermissible motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, ——, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993); *Martin v. Nannie and the Newborns, Inc.*, 3 F.3d 1410, 1417 (10th Cir.1993) (citing *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095).

■ To establish their *prima facie* case under section 1981, plaintiffs need only show: (1) they are members of a protected class; (2) they attempted to contract for certain services; (3) they were denied the right to contract for those services; and (4) such services remained available to others outside the protected class. *See generally, Chauhan*, 897 F.2d at 127; *Jackson v. Montgomery*, 999 F.2d 547 (10th Cir.1993) (setting forth *prima facie* elements). The elements of a *prima facie* case are flexible and are not intended to be applied rigidly. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 n. 2 (10th Cir.1994) (citations omitted).

■ Notwithstanding the flexibility afforded proof of a *prima facie* case, the undisputed facts in this matter present three problems for plaintiffs.[3] First, as a result of the altercation in which plaintiffs became involved on March 25, 1995, they never attempted to obtain service by ordering food or drinks from Denny's. To the extent they did attempt to obtain service, they were in fact seated and given water and menus. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 5; *see* Pls.' Mem. in Opp'n to Defs. Curtis Hain's and Susan La Morte's Mot. for Summ.J., Resp. to Statement of Undisputed Material Facts ¶ 5 [filed Feb. 8, 1995] [hereinafter "Pls.' Resp."].)[4]

---

3. There is no dispute that plaintiffs belong to a protected class.

4. On several occasions, plaintiffs dispute defendants' proffered statements of undisputed facts by offering statements ostensibly supported by evidence in the record. Plaintiffs' exhibits, however, fail to include numerous deposition pages upon which they rely. (*See* Pl.'s Resp., Resp. to Statement of Undisputed Material Facts ¶ 5, Ex. A [Griffin Dep. missing cited pages 70–76], Ex. B [White Dep. missing cited pages 55–62] ¶ 6, Ex. C [King Dep. missing cited pages 82–83] ¶ 7, Ex. B [White Dep. missing cited pages 65–67] ¶ 11, Ex. D [McRae Dep. missing cited page 63] ¶ 17,

Ex. E [Hain Dep. missing cited pages 78, 102–03] ¶ 20, Ex. A [Griffin Dep. missing cited pages 153–54], Ex. B [White Dep. missing cited pages 92–93, 105–08, 149–51], Ex. C [King Dep. missing cited page 177], Ex. D [McRae Dep. missing cited pages 75, 82–83, 88, 108, 119, 154–55].) Such carelessness is also present in plaintiffs' purported statement of additional disputed facts, wherein their exhibits fail to include several cited pages of documentary evidence to support their alleged disputed facts. (*Id.*, Statement of Additional Disputed Facts ¶ G, Ex. B [White Dep. missing cited page 50], Ex. E [Hain Dep. missing cited page 81] ¶ L, Ex. G [Hr'g Tr. missing cited

Second, because plaintiffs never sought to order food or beverages, defendants did not actually deny service to them. I recognize, however, that plaintiffs entered Denny's with the obvious intention to order food and drinks, and that Hain and La Morte arguably precluded them from doing so by participating in the incident giving rise to plaintiffs' cause of action. Thus, the fact that plaintiffs did not literally attempt to order food and drinks at Denny's is not enough, in and of itself, to conclude that plaintiffs have failed to meet their *prima facie* burden. That finding, however, does not conclude my inquiry.

The third and fatal problem plaintiffs face with respect to their *prima facie* case is their complete failure to show that others outside the protected class were offered the services which they were purportedly denied. Plaintiffs concede that the police arrested Grauderick and Fore on March 25, 1995. (Pls.' Resp., Statement of Additional Disputed Facts ¶ N.) There is no evidence that those defendants obtained service from Denny's, beyond the service which plaintiffs also received, *i.e.*, being seated and given water and menus. Nonetheless, plaintiffs contend they suffered unequal treatment because Grauderick and Fore were not arrested until a third-party witness informed the police that those individuals started the altercation. (*Id.*) I reject plaintiffs' contention for two reasons: (1) regardless of when Grauderick and Fore were arrested, there is no evidence they received the service which plaintiffs' were allegedly denied; and (2) the only evidence plaintiffs submit to support their "unequal treatment" contention is an inadmissible statement from a man who claims to be familiar with the Denny's incident. (*Id.*, Ex. J [interview "in the parking lot of World Gymn [sic] ... with Mr. Duane Higgins...."].)

The undisputed evidence before me reveals that Grauderick and Fore were *not* permitted to order food or drinks from Denny's on March 25, 1995, as La Morte filed identical or similar criminal charges against Grauderick, Fore, and plaintiffs. (Defs.' Reply at 7, Ex. B [La Morte's summons and complaints against Grauderick, Fore, Griffin, King, McRae, and White].) As a result of La Morte's complaints, the police arrested all parties involved in the altercation. Grauderick, Fore, and plaintiffs were even-handedly denied the right to obtain continuing service from Denny's. Accordingly, I find that plaintiffs have failed to support their initial burden in this matter. *See St. Mary's Honor Ctr.*, 509 U.S. at ——, 113 S.Ct. at 2747–48. Because plaintiffs have failed to establish a *prima facie* case, my inquiry technically ends, and defendants are entitled to summary judgment on plaintiffs' section 1981 claim.[5] I, nonetheless, will proceed to consider the merit of plaintiffs' section 1981 claim assuming *arguendo* that they could meet the *prima facie* elements of their claim. For the reasons set forth below, I alternatively conclude that even if plaintiffs could support a *prima facie* case of intentional discrimination, they fail to meet their ultimate summary judgment burden.

 Assuming *arguendo* that plaintiffs met their initial burden under *McDonnell Douglas*, the burden of production would shift to defendants. *See Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995). Defendants have articulated a legitimate non-discriminatory reason for denying plaintiffs continued service. It is undisputed that Hain personally witnessed Ms. King's use of loud profanity when she retaliated against Grauderick and Fore by yelling "bitch" across the restaurant in response to Fore's offensive racial comments directed to plaintiffs.[6] (Hain/La Morte Mot., Statement of

page 6].) Rather than strike plaintiffs' brief in its entirety for failure to comply with this court's Hearing, Trial, and Conference Procedures § VII, I consider the evidence offered in support of their opposition to summary judgment to the extent such evidence is part of the record.

**5.** Plaintiffs "acknowledge" the burden shifting scheme articulated in *McDonnell Douglas,* but incorrectly presume they are not required to

present evidence to support the conclusory allegations of their complaint because "defendants have failed to demonstrate that no genuine issues of material fact exist." (Pls.' Resp. at 8–9 & n. 12.)

**6.** King heard Fore say, "It's a nigger thing" and "That's how niggers act." (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 6; Pls.'

Material Undisputed Facts ¶ 11.) McRae, Griffin, and White all corroborate Hain's testimony regarding King's retaliatory behavior and use of profanity. (*Id.*, Ex. B [McRae Dep. at 64–65, 90–91], Ex. C [Griffin Dep. at 87–88], Ex. D [White Dep. at 74].) Hain, who was standing beside plaintiffs' table when King made her retaliatory remark, responded to the situation by telling plaintiffs, "That's it. You're out of here." (*Id.*, Statement of Material Undisputed Facts ¶ 12; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 12.) Defendants need not prove that their proffered reasons were credible or sufficient. *See Cone*, 14 F.3d at 530; *see also EEOC v. Flasher*, 986 F.2d 1312, 1316 (10th Cir.1992) (defendant need not show that its reason for terminating plaintiff was bona fide). It is also unnecessary for defendants to convince the court that it was actually motivated by the proffered reasons. *See Trujillo v. Grand Junction Regional Ctr.*, 928 F.2d 973, 977 (10th Cir.1991).

■ To survive summary judgment, plaintiffs must now establish the existence of a genuine issue of material fact as to whether defendants' proffered reasons are unworthy of belief. *Randle*, 69 F.3d at 452 n. 17 (expressing en banc consideration and holding regarding burden placed upon civil rights plaintiff at summary judgment stage); *Cole*, 43 F.3d at 1373 (concluding that substantial questions of fact exist regarding whether disbelief of defendant's proffered reason "may, together with the elements of plaintiff's *prima facie* case, show intentional discrimination"); *Cone*, 14 F.3d at 530 ("To defeat a summary judgment motion, [plaintiff] would have to simply point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence.") (citing *MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1121–22 [10th Cir.1991] ). The facts must be viewed in the light most favorable to plaintiffs and all reasonable inferences must be

drawn in their favor. Plaintiffs' conclusory allegations alone, however, will not defeat the entry of summary judgment. *See Cone*, 14 F.3d at 530.

To be sure, Grauderick's and Fore's conduct on March 25, 1995, is reprehensible; however, it does not follow that plaintiffs have a civil rights cause of action against Defendants Hain, La Morte, and Denny's. On the contrary, as explained below, plaintiffs have presented no evidence which suggests that Hain or La Morte were motivated by discriminatory animus on March 25, 1995.[7] The undisputed details of the events that morning are as follows:

(1) Grauderick and Fore entered Denny's after plaintiffs and immediately "had words" with one member of a group of black men standing in the lobby of the restaurant. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 1; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 1, Statement of Additional Disputed Facts ¶ F; *admitted at* Defs.' Reply at 3.) [8]

(2) La Morte noticed that Grauderick appeared intoxicated and told him to "cease his conduct or . . . he would go to jail," and in response, Grauderick "quieted down." (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 2; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 2.)

(3) Grauderick approached Hain to obtain seating, and, as Hain began to escort Grauderick and Fore into the dining room, plaintiffs informed Hain they were first in line. (Pls.' Resp., Statement of Additional Disputed Facts ¶ G, Ex. B [White Dep. at 49], Ex. C [King Dep. at 66], Ex. D [McRae Dep. at 42, 44], Ex. E [Hain Dep. at 80, 82]; *admitted at* Defs.' Reply at 3.)

(4) Hain continued to seat Grauderick, and, within "a few seconds" to "a few minutes" a different Denny's employee sat plaintiffs at a table located in the same

---

Resp., Resp. to Statement of Undisputed Material Facts ¶ 6.)

**7.** The only factual allegations involving Denny's as a defendant in this matter are those alleged in connection with Hain's and La Morte's conduct.

**8.** The black men apparently left the restaurant and are not otherwise involved in this dispute in any manner.

section as Grauderick and Fore. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 5, Ex. A [King Dep. at 69–70 (seated within "a few seconds")], Ex. B [McRae Dep. at 49–50, 54 (seated within "two to four minutes")], Ex. C [Griffin Dep. at 70 (waited "one or two minutes")], Ex. D [White Dep. at 56 (employee approached within "one to three minutes")]; *see* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 5, Statement of Additional Disputed Facts ¶ G; *admitted at* Defs.' Reply at 3.)

(5) Denny's has a standard, nation-wide policy of seating patrons on a "first come, first serve" basis. (Pls.' Resp., Statement of Additional Disputed Facts ¶ H; *admitted at* Defs.' Reply at 3.)

(6) The following conversation occurred as Hain seated Grauderick and Fore:

Grauderick: "Well, you're not going to sit any black people back here are you?" Hain: "Yes, as a matter of fact, I am." Grauderick: "Well, seat them over there, or [s]eat them somewhere else . . . cause they were mouthing off to me up front." Hain: "Look, tell you what, why don't you just find a different restaurant. I'm not going to discriminate just because of one jerk [sic] said something to you up front." (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 3, Ex. F [Hr'g Tr. at 98–99]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 3.)

(7) Fore then told Hain: "Oh, you know us. We—we come in here all the time. We just want to get something to eat. I'll keep him (Grauderick) under control," and Grauderick stated: "Yeah, I—I just want to get something to eat." Hain then seated Grauderick and Fore. (*Id.*)

(8) Hain testified that he empathized with "the fact that Grauderick and Fore had a dispute with somebody up at the door when they were entering the restaurant," but not with the fact that "[Grauderick and Fore] didn't feel like sitting around any black people." (Pls.' Resp., Statement of

Additional Disputed Facts ¶ I, Ex. G [Hr'g Tr. at 109]; Defs.' Reply, Reply Concerning Undisputed Facts ¶ I, Ex. A [Hain Dep. at 65].)

(9) After plaintiffs were seated, they engaged in a verbal exchange with Grauderick and Fore; Grauderick approached plaintiffs' table and called them gang members; plaintiffs told Grauderick they were not gang members and to shut-up and sit down, and Grauderick returned to his table. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶¶ 8–9; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 8–9.) [9]

(10) Hain, who had approached plaintiffs' table because plaintiffs were yelling, told plaintiffs to leave the restaurant in response to King's retaliatory "bitch" remark directed to Fore. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶¶ 11–12; *see* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 11–12, Ex. G [Hr'g Tr. at 30].)

(11) La Morte (apparently noticing the commotion), approached plaintiffs (who were standing) and told them to "shut up and sit down." (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 13, Ex. B [McRae Dep. at 72–73]; *see* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 13.)

(12) McRae raised her voice and told La Morte that Grauderick and Fore had called her a "nigger." (*Id.*)

(13) La Morte then grabbed McRae's right wrist and extended McRae's arm behind her back. (*Id.*)

(14) Hain assisted La Morte by grabbing McRae's left forearm and holding it for a few minutes. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 14; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 14.)

(15) White intervened between La Morte and McRae and asked La Morte to "please let [her] friend go . . . so [they could] leave." (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 15, Ex. D

---

**9.** There is no evidence that Hain or La Morte was present or overheard the exchange between plaintiffs and Grauderick.

[White Dep. at 92–93]; *see* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 15.)

(16) Griffin asked La Morte to release McRae's wrist, and La Morte responded by saying, "No. You're all going to jail." (Pls.' Resp., Statement of Additional Disputed Facts ¶ C; *admitted at* Defs.' Reply at 3.)

(17) La Morte held McRae's wrist behind her back for approximately five minutes, at which time the police arrived at Denny's in response to La Morte's call for help. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 13, Ex. C [Griffin Dep. at 106]); *see* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 13.)

(18) La Morte filed a written summons and complaint against Grauderick, Fore, Griffin, King, McRae, and White. Grauderick was arrested and charged with disturbing the peace, trespass, and interference with a deputy sheriff. Fore was arrested and charged with disturbing the peace and trespass. Griffin and King were arrested and charged with disturbing the peace. McRae and White were arrested and charged with interference, disturbing the peace, and assault. (Defs.' Reply, Ex. B [summons and complaints].)

(19) Hain did not use any racial epithets, or direct any racial slurs at plaintiffs during the entire time plaintiffs were in Denny's. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 18; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 18.)

(20) La Morte did not use any racial epithets, or direct any racial slurs at plaintiffs during the entire time plaintiffs were in Denny's. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 19; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 19.)

(21) Neither Hain nor La Morte indicated that plaintiffs were unwelcome to return to the Leetsdale Denny's. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 21; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 21.)

Based upon the above facts, Hain, La Morte, and Denny's contend they are entitled to summary judgment, while plaintiffs argue that disputed issues of fact preclude an award in defendants' favor.

■ The only allegations supported by evidence in the record which plaintiffs contend create a factual dispute rendering summary judgment inappropriate are as follows: (1) the fact that Hain seated Grauderick and Fore before seating plaintiffs; (2) the fact that La Morte grabbed McRae's wrist; and (3) the fact that neither Hain nor La Morte escorted or ordered Grauderick and Fore out of the restaurant upon learning about the racial comments they directed toward plaintiffs. (Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 5, 13, Statement of Additional Disputed Facts ¶¶ E, G, M.) As previously stated, defendants assume, for purposes of their motion, that all those facts are true, and maintain that summary judgment on plaintiffs' intentional discrimination claims is nonetheless appropriate. I agree.

Upon thorough review and consideration, I find that all the evidence before me reveals that Hain and La Morte treated plaintiffs, Grauderick, and Fore equally. All six individuals were seated, given water and menus, and ultimately denied food service as a result of their unruly conduct. Had plaintiffs not engaged in retaliatory conduct with Grauderick and Fore, there is no evidence they would have been ordered to leave the restaurant. The fact that Grauderick and Fore instigated the matter and that their alleged conduct constitutes intolerable racism does not convert the situation into a cause of action for intentional discrimination against Hain, La Morte, or Denny's. It is undisputed that neither Hain nor La Morte made any racial comments. Instead, they both reacted to a volatile situation in a manner they saw most fitting at the time the predicament arose. Although there may have been alternate ways to handle the unfortunate events which occurred on March 25, 1995, that is not the test. Plaintiffs have failed to establish a factual dispute which renders defendants' nondiscriminatory explanation unworthy of

credence, and that is the test. *Cone,* 14 F.3d at 530.

■ I reject plaintiffs' reliance on the "preferential seating" issue as a basis for their section 1981 claim. Although Hain's conduct may constitute poor service and/or a breach of company policy, it does not rise to the level of violating plaintiffs' civil rights. *Randle v. City of Aurora,* 69 F.3d 441, 454 (10th Cir.1995) ("The mere fact that an employer failed to follow its own internal *procedures* does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for the employment decision were pretextual.") (citation omitted); *Robertson v. Burger King, Inc.,* 848 F.Supp. 78, 81 (E.D.La.1994) ("While inconvenient, frustrating, and all too common, the mere fact of slow service in a fast-food restaurant does not, in the eyes of this Court, rise to the level of violating one's civil rights."); *Stearnes v. Baur's Opera House, Inc.,* 788 F.Supp. 375, 377–78 (C.D.Ill.1992) (night club's practice of choosing music not enjoyed by African–American patrons and the manager's statement that the practice was used "to keep blacks out" may demonstrate gross insensitivity, but they are not enough to establish a civil rights violation).

I also reject plaintiffs' reliance on La Morte's conduct as a basis for their intentional discrimination claim. Plaintiffs do not dispute that McRae and King were actively retaliating against Grauderick and Fore, by raising their voices and using profane language. La Morte reacted to the situation by controlling one of the actors involved in the altercation. La Morte's conduct was a reasonable reaction to the escalating situation and a reasonable means for restraining McRae until the police arrived on the scene. La Morte and Hain had previously issued warnings to both parties, and the fact that La Morte held McRae's arm, instead of seizing the other plaintiffs, Grauderick, or Fore does not call into question defendants' nondiscriminatory explanation for La Morte's behavior. Similarly, the fact that Hain and La Morte did not escort or order Grauderick and Fore out of the restaurant at some point prior to calling the police may indicate bad

judgment, but it does not suffice as the basis for a section 1981 claim. It is undisputed that shortly before Hain told plaintiffs to leave the restaurant, Grauderick and Fore agreed to settle down, and Hain expressly told them he would not discriminate by seating blacks in another section of the restaurant. I therefore conclude that defendants' motion for summary judgment should be granted with respect to plaintiffs' section 1981 claim on the following, alternate grounds: (1) plaintiffs failed to establish a *prima facie* case of intentional discrimination; and (2) plaintiffs failed to establish a genuine issue of material fact with respect to defendants' nondiscriminatory explanation for their conduct.

### c. *42 U.S.C.A. § 1985(3)—Conspiracy to Discriminate*

■ To avoid summary judgment on their section 1985 claim, plaintiffs must establish a disputed issue of fact with respect to the alleged existence of a conspiracy to deprive them of equal protection of the laws or equal privileges and immunities under the laws. *See Dixon v. City of Lawton,* 898 F.2d 1443, 1447 (10th Cir.1990). Plaintiffs cannot meet that burden without producing evidence of a meeting of the minds, *i.e.,* "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *See Lenard v. Argento,* 699 F.2d 874, 882–83 (7th Cir.) (citation omitted), *cert. denied,* 464 U.S. 815, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *see also Abercrombie v. City of Catoosa,* 896 F.2d 1228, 1230–31 (10th Cir.1990) (affirming summary judgment on section 1985[2] claim where plaintiff failed to establish "either by direct or circumstantial evidence, a meeting of the minds or agreement among the parties").

■ In this case, plaintiffs have produced no evidence that Hain and La Morte had a plan with each other, or anyone else. On the contrary, the evidence indicates Hain and La Morte were sending somewhat mixed messages to everyone involved in the altercation. For example, La Morte told Grauderick that he would go to jail if he did not "cease his conduct," (Hain/La Morte Mot., Statement of

**1430**

Material Undisputed Facts ¶ 2; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 2), whereas, Hain told Grauderick to find a different restaurant, (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶ 3; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶ 3). Additionally, Hain ordered plaintiffs out of the restaurant in response to King's profanity, whereas, La Morte told plaintiffs to shut-up and sit down. (Hain/La Morte Mot., Statement of Material Undisputed Facts ¶¶ 12–13, Ex. B [McRae Dep. at 65, 72]; *admitted at* Pls.' Resp., Resp. to Statement of Undisputed Material Facts ¶¶ 12–13.) Without any evidence of communication between Hain and La Morte, there is nothing to give rise to the inference that they conspired. *See Abercrombie,* 896 F.2d at 1231. I therefore conclude that plaintiffs have failed to establish a genuine issue of material fact concerning the existence of a conspiracy. Accordingly, their section 1985 claim is dismissed. Alternatively, plaintiffs' section 1985(3) is dismissed because they fail to establish any evidence that a conspirator's action was motivated by a class-based invidiously discriminatory animus. *See Dixon,* 898 F.2d at 1447.

### 3. Supplemental Jurisdiction

Pursuant to 28 U.S.C.A. § 1367(c)(3) (West 1993), a district court has discretion to decline to exercise supplemental jurisdiction once it has dismissed the claims over which it had original jurisdiction. *Panis v. Mission Hills Bank, N.A.,* 60 F.3d 1486, 1492 (10th Cir.1995) (approving district court's dismissal of state-law conversion and breach of contract claims where defendants obtained summary judgment on plaintiff's gender discrimination claim). Now that plaintiffs' federal-law claims have dropped from the case, their state-law claims are no longer supplemental to any federal question claim. *See Ball v. Renner,* 54 F.3d 664, 669 (10th Cir.1995) (remanding state tort-law claims upon dismissal of plaintiffs' title VII claim for sexual harassment). "Under those circumstances the most common response to a pretrial disposition of federal claims has been to dismiss the state law claim or claims without prejudice...." *Id.*

"Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *See Thatcher Enters. v. Cache County Corp.,* 902 F.2d 1472, 1478 (10th Cir.1990). Finding no compelling reason for continuing federal jurisdiction in this matter, I conclude that judicial economy and fairness to the parties point strongly in favor of state, rather than federal court resolution of the remaining state-law claims. *See Ball,* 54 F.3d at 669. Accordingly, I remand plaintiffs' case.

### 4. Conclusion

Based on the foregoing, it is therefore

ORDERED as follows:

(1) Defendants Flagstar Corporation's, Flagstar Companies, Inc.'s, and Denny's Holdings, Inc.'s motion to dismiss plaintiffs' first amended complaint is GRANTED with respect to those defendants. Defendants Flagstar Corporation, Flagstar Companies, Inc., and Denny's Holdings, Inc. are accordingly dismissed from plaintiffs' case.

(2) Defendants Curtis Hain's and Susan La Morte's combined and individual motions for summary judgment are GRANTED in part and DENIED in part.

(3) The following federal-law claims are dismissed with prejudice: (a) race discrimination in violation of 42 U.S.C.A. 2000a; (b) violation of plaintiffs' right to make and enforce contracts in violation of 42 U.S.C.A. § 1981; and (c) conspiracy to racially discriminate in violation of 42 U.S.C.A. § 1985.

(4) Plaintiffs' remaining state-law claims are remanded.

(5) Plaintiffs' motion for partial summary judgment is DENIED as moot.

(6) Each party shall bear his, her, or its own costs.