UNITED STATES *v.* JOHNSON ET AL.

No. 482. Argued March 14, 1968.—Decided April 8, 1968.

*Ralph S. Spritzer* argued the cause for the United States. On the brief were *Solicitor General Griswold* and *Assistant Attorney General Doar.*

*Robert B. Thompson,* by appointment of the Court, *post,* p. 917, argued the cause for appellees. With him on the brief was *Reuben A. Garland.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The question in this case is whether conspiracies by outside hoodlums to assault Negroes for exercising their right to equality in public accommodations under § 201 of the Civil Rights Act of 1964, 78 Stat. 243, 42 U. S. C. § 2000a, are subject only to a civil suit for an injunction as provided in § 204 of that Act, 42 U. S. C. § 2000a–3, or whether they are also subject to criminal prosecution under 18 U. S. C. § 241, which provides fine and imprisonment for a conspiracy "to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution

or laws of the United States, or because of his having so exercised the same . . . ."

The indictment charged a conspiracy to injure and intimidate three Negroes in the exercise of their right to patronize a restaurant. The defendants, who were outsiders, not connected with the restaurant, are charged with having used violence against these Negroes for having received service at the restaurant, the purpose of the conspiracy being in part "to discourage them and other Negro citizens from seeking service" there "on the same basis as white citizens."

The facts are not developed because the District Court granted a motion to dismiss the indictment on the ground that § 207 (b) of the Act[1] makes the provision for relief by injunction the exclusive remedy under the Act. The case is here on appeal. 18 U. S. C. § 3731. We noted probable jurisdiction. 389 U. S. 910.

The legislative history contains language which to the District Court seemed to preclude remedy by indictment. Senator Humphrey, floor manager of the bill, explained § 207 (b):

> "This would mean, for example, that a proprietor who, in the first instance, legitimately—but erroneously—believes his establishment is not covered by section 201 or 202 need not fear a jail sentence or a damage action if his judgment as to coverage of title II is wrong." 110 Cong. Rec. 9767.

---

[1] Section 207 (b) of the Act, 42 U. S. C. § 2000a–6 (b), provides: "The remedies provided in this title shall be the exclusive means of enforcing the rights based on this title, but nothing in this title shall preclude any individual or any State or local agency from asserting any right based on any other Federal or State law not inconsistent with this title, including any statute or ordinance requiring nondiscrimination in public establishments or accommodations, or from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right."

Senator Young agreed:

"The enforcement provisions of title II are based on the specific prohibition in section 203 against denying or interfering with the right to the non-discriminatory use of facilities covered by the title. In case of a violation, the aggrieved person would be able to sue for an injunction to end the denial or interference. . . . The prohibitions of title II would be enforced only by civil suits for an injunction. Neither criminal penalties nor the recovery of money damages would be involved." 110 Cong. Rec. 7384.

Senator Magnuson added:

"Moreover, in every case, a judicial determination of coverage must be made prior to the entry of any order requiring the owner to stop discrimination. Thus, no one would become subject to any contempt sanctions—the only sanctions provided for in the act, until after it has been judicially determined that his establishment is subject to the act and he has been ordered by the Court to end this discrimination, and he has violated that Court order." 110 Cong. Rec. 7405.

That legislative history makes clear that the "proprietor" or "owner" is not to be subjected to criminal liability, where he has not had a chance to litigate whether his facilities are subject to the Act. But no proprietor or owner is here involved. Outside hoodlums are charged with the conspiracy; and the history of federal law, as applicable to them, is clear. 18 U. S. C. § 241 is derived from the Enforcement Act of 1870, § 6, 16 Stat. 141, and, as noted, protects the citizen "in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." The right to service in a restaurant is such a "right," at least

by virtue of the 1964 Act. We said in *United States* v. *Price,* 383 U. S. 787, 801, in reference to 18 U. S. C. § 241, "We think that history leaves no doubt that, if we are to give § 241 the scope that its origins dictate, we must accord it a sweep as broad as its language."

We have over the years given protection to many federal rights under § 241.[2] We refuse to believe that hoodlums operating in the fashion of the Ku Klux Klan, were given protection by the 1964 Act for violating those "rights" of the citizen that § 241 was designed to protect.

Immediately after the provision in § 207 (b) stating that the remedies provided "shall be the exclusive means of enforcing the rights based on this title," is a further provision stating that "nothing in this title shall preclude any individual or any State or local agency from asserting any right based on any other Federal or State law not inconsistent with this title . . . or from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right." There is, therefore, within the four corners of § 207 (b) evidence that it was not designed as pre-empting every other mode of protecting a federal "right" or as granting immunity to those who had long been subject to the regime of § 241.

It is, of course, true that § 203 (b) of the Act, 42 U. S. C. § 2000a–2 (b), bars the use of violence against those who assert their rights under the Act, and that therefore a remedy by way of an injunction could be obtained by the party aggrieved under § 204 (a). A like remedy is

---

[2] See, *e. g., United States* v. *Classic,* 313 U. S. 299 (the right to vote); *United States* v. *Guest,* 383 U. S. 745 (right to travel); *United States* v. *Waddell,* 112 U. S. 76 (the right to perfect a homestead); *Logan* v. *United States,* 144 U. S. 263 (the right to be free of violence while in the custody of a federal marshal); *United States* v. *Mason,* 213 U. S. 115 (the right of federal officers to perform their duties); *United States* v. *Price,* 383 U. S. 787 (Fourteenth Amendment rights).

available to the Attorney General by reason of § 206 (a). But as we read the Act, the exclusive-remedy provision of § 207 (b) was inserted *only to make clear that the substantive rights to public accommodation defined in § 201 and § 202 are to be enforced exclusively by injunction.* Proprietors and owners are not to be prosecuted criminally for mere refusal to serve Negroes. But the Act does not purport to deal with outsiders; nor can we imagine that Congress desired to give them a brand new immunity from prosecution under 18 U. S. C. § 241—a statute that encompasses *"all* of the rights and privileges secured to citizens by *all* of the Constitution and *all* of the laws of the United States." *United States* v. *Price, supra,* at 800.

*Reversed.*

MR. JUSTICE MARSHALL took no part in the consideration or decision of this case.

MR. JUSTICE STEWART, with whom MR. JUSTICE BLACK and MR. JUSTICE HARLAN join, dissenting.

I regret that I cannot join the opinion of the Court. There is, of course, no question of the reprehensibility of the appellees' alleged conduct. But the issue is whether Congress has subjected this conduct to federal criminal prosecution.

Section 201 of Title II of the Civil Rights Act of 1964, 78 Stat. 243, secures the right to equal enjoyment of places of public accommodation. Section 203 prohibits interference with that right in any of three ways:

"No person shall (a) withhold, deny, or attempt to withhold or deny, or deprive or attempt to deprive, any person of any right or privilege secured by section 201 or 202, or (b) intimidate, threaten, or coerce, or attempt to intimidate, threaten, or

coerce any person with the purpose of interfering with any right or privilege secured by section 201 or 202, or (c) punish or attempt to punish any person for exercising or attempting to exercise any right or privilege secured by section 201 or 202."

Section 204 authorizes private injunctive actions against violations of § 203. Section 206 provides for injunctive actions by the Attorney General against patterns or practices of resistance to enjoyment of Title II rights. Finally § 207 (b) states:

"The remedies provided in this title shall be the exclusive means of enforcing the rights based on this title . . . ."[1]

The plain language of the exclusive remedies clause of § 207 thus clearly precludes a criminal prosecution for interfering with rights secured by Title II.[2] And the very legislative history cited by the Court leaves no doubt that a specific purpose of that clause was to prevent criminal prosecutions under 18 U. S. C. § 241. It was upon that understanding that Congress enacted the legislation.

The Court's effort to distinguish between refusal of service by a proprietor and violent interference by third parties is not only without any support in the language

---

[1] Section 207 contains a proviso; but the United States, which brought this prosecution, is conspicuously absent from the list of those to whom the proviso applies:

"[N]othing in this title shall preclude *any individual or any State or local agency* from asserting any right based on any other Federal or State law not inconsistent with this title, including any statute or ordinance requiring nondiscrimination in public establishments or accommodations, or from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right." (Emphasis added.)

[2] The indictment did not allege injury to any rights other than those established by Title II of the Civil Rights Act of 1964.

of § 207 but also is belied by § 203 of the Title, quoted above. That section clearly prohibits intimidation and coercion by third persons as well as refusal of service by a proprietor. Congress, therefore, was explicitly aware of the kind of conduct alleged in this case when it enacted Title II, and Congress provided in § 207 that the exclusive remedy to prohibit such conduct must be by injunction.

The exclusive remedies provided by Congress to protect the rights secured by Title II of the 1964 Act are undoubtedly ineffective in a case like this. But I cannot, for that reason, join in rewriting the law that Congress so clearly enacted.

I respectfully dissent.