85 F.3d 450
 96 Cal. Daily Op. Serv. 4026, 96 Daily Journal
D.A.R. 6499
UNITED STATES of America, Plaintiff-Appellant,
v.
Jeremy BAIRD; Gary Flores; Jason Jordan; Aaron Phillips;
Timothy Reasons, Defendants-Appellees.
 No. 94-10494.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 12, 1995.
Decided June 5, 1996.
 
 Quin Denvir, Sacramento, California, for defendants-appellees.
 Charles J. Stevens, United States Attorney, Sacramento, California, for plaintiff-appellant.
 Appeal from the United States District Court for the Eastern District of California, William B. Shubb, District Judge, Presiding. D.C. No. CR-94-00162-WBS.
 Before GOODWIN, FARRIS and KLEINFELD, Circuit Judges.
 KLEINFELD, Circuit Judge:
 
 
 1
 The question in this case is whether the presence of electronic video games turns a convenience store into a "public accommodation" under the Civil Rights Act of 1964. 42 U.S.C. § 2000a(b)(3). We conclude that it does.
 
 FACTS
 
 2
 Several alleged white supremacists were indicted for beating two men, one black and one Hispanic, in the parking lot of a 7-11 store. The indictment was federal, for conspiracy to violate civil rights under 18 U.S.C. § 241, and interference with federally protected activities under 18 U.S.C. § 245(b)(2)(F). Thus, rather than being a state assault case, this was prosecuted as a civil rights case. The parties agree that an element of both counts is whether the 7-11 store is a "public accommodation" under 42 U.S.C. § 2000a, and that the government must prove that it is beyond a reasonable doubt. The parties stipulated that the court should decide as a matter of law, prior to jury trial, whether the store was a public accommodation. The court decided that it was not, so granted defendant's motion to dismiss. The government appeals. The issue, as framed by the parties, is whether the 7-11 was a "place of ... entertainment" under 42 U.S.C. § 2000a(b)(3), and therefore a "public accommodation."The 7-11 store in this case, like 7-11 stores across the country, is a convenience store that sells a broad assortment of items including food and drinks, newspapers and magazines, cleaning supplies, automotive supplies, personal toiletries, and first aid supplies. It is a franchise, and a high official of the corporation testified that 7-11 stores "are not intended to be places of exhibition or entertainment, but rather are retail establishments designed to sell ... goods ... in a convenient and speedy transaction." Nevertheless, the operator of this store agreed with an amusement machine company to place two electronic video games in the store and split the proceeds. The machines were there for a fairly short time, from some time in 1993 until the store operator had them removed in the spring of 1994. The game machines did not generate much revenue. During the month the assault in the parking lot occurred, the machines yielded less than one-quarter of one percent of the store's gross revenues. When they were removed, about a year later, they were producing less than $150 per month.
 
 ANALYSIS
 
 3
 As the parties have framed it, the question before us is entirely one of law rather than fact. We review the statutory interpretation of the district court de novo. United States v. Bailey, 41 F.3d 413, 416 (9th Cir.1994).
 
 
 4
 Defendants were indicted for conspiring to intimidate people in the free exercise of rights secured by law, under 18 U.S.C. § 241, and for using force to interfere with people because of their race, color, religion or national origin and their enjoyment of the services of a public accommodation, under 18 U.S.C. § 245. The Civil Rights Act of 1964 entitles all persons "to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section." 42 U.S.C. § 2000a (1996). Listed establishments are places of public accommodation, provided their operations affect commerce, including:
 
 
 5
 (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station;
 
 
 6
 (3) any motion picture house, theater, concert hall, sports arena, stadium or other place of exhibition or entertainment; and
 
 
 7
 (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.
 
 
 8
 42 U.S.C. § 2000a(b)(2)-(4) (1996).
 
 
 9
 The government argued in district court that the sale of food ready to eat and sale of lottery tickets made the store a public accommodation under these subsections, but does not urge either position on appeal. All that is before us is whether the two video games make the store a place of entertainment under the above sections.
 
 
 10
 Defendants argue that under United States v. Kozminski, 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988), the government cannot charge them under 18 U.S.C. §§ 241 and 245, because Kozminski holds that 18 U.S.C. § 241 "prohibit[s] only intentional interference with rights made specific either by the express terms of the Federal Constitution or laws or by decisions interpreting them." Kozminski, 487 U.S. at 941, 108 S.Ct. at 2759. The argument is without force, because 18 U.S.C. § 245 expressly defines the rights at issue in that statute, and 42 U.S.C. § 2000a expressly defines the federal right which was at issue in the 18 U.S.C. § 241 conspiracy. See United States v. Johnson, 390 U.S. 563, 563-66, 88 S.Ct. 1231, 1232-34, 20 L.Ed.2d 132 (1968)(holding that interference with the right to service in a restaurant is chargeable under 18 U.S.C. § 241).
 
 
 11
 The district court held that the two video games do not make the store a place of entertainment, for three plausible reasons. First, the phrase "any motion picture house, theater, concert hall, sports arena, stadium, or any other place of exhibition or entertainment" does not appear to mean a store which does not put on exhibits for spectators. The 7-11 store with video games is not like a motion picture house etc. Second, the video games were not the principle business, or even a substantial part of the business, of the 7-11 store. Third, holding that the two game machines turn the 7-11 into a public accommodation would imply that removing them would deprive patrons of protection under the Civil Rights Act of 1964. Precedent is surprisingly sparse on whether such a store is a "place of ... entertainment."
 
 
 12
 Though it did not use the terms, the district court construed the statute in accord with the principles of statutory construction, noscitur a sociis and ejusdem generis. The first means that a word is understood by the associated words, the second, that a general term following more specific terms means that the things embraced in the general term are of the same kind as those denoted by the specific terms. 2A Norman J. Singer, Sutherland-Statutory Construction §§ 47.16, 47.17 (5th ed.1992). Thus, in a statute defining "motor vehicle" to include "an automobile, automobile truck, automobile wagon, motorcycle, or any other self propelled vehicle not designed for running on rails," the term does not embrace airplanes, even though they fit the dictionary meaning of "vehicle" and do not run on rails. McBoyle v. United States, 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931)(Holmes, J.). "[A] vehicle in the popular sense, that is a vehicle running on land, is the theme." Id. at 26, 51 S.Ct. at 341. But the canons of construction "describe[ ] what we usually mean by a particular manner of expression, but do[ ] not prescribe how we must interpret a phrase once written." Longview Fibre Co. v. Rasmussen, 980 F.2d 1307, 1313 (9th Cir.1992).
 
 
 13
 The Supreme Court has rejected an ejusdem generis construction of the "place of exhibition or entertainment" phrase in the statute before us. In Daniel v. Paul, 395 U.S. 298, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969), the issue was whether an amusement area with a lake for swimming and boating open only to whites was a public accommodation. Although the snack bar brought the amusement area within the Civil Rights Act, the Supreme Court went beyond the holding to reject the argument that " 'place of entertainment' refers only to establishments where patrons are entertained as spectators or listeners rather than those where entertainment takes the form of direct participation in some sport or activity." Id. at 306, 89 S.Ct. at 1701. The Court said that under the dictionary definition of entertainment, "the act of diverting, amusing, or causing someone's time to pass agreeably: [synonymous with] amusement," the lake was a "place of entertainment." The Court said that this interpretation is consistent with the statutory purpose, "to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensively open to the general public." Id. at 307-08, 89 S.Ct. at 1702.
 
 
 14
 Although the Daniel construction of "place of ... entertainment" may be dictum, we treat Supreme Court dicta with due deference, and see no reason not to apply the Court's construction in the case at bar. A place where people play video games differs from a "motion picture house, theater, concert hall, sports arena, stadium" in that the player generally acts alone rather than sitting with a crowd, and actively creates his own entertainment by putting money in the machine and manipulating the machine, rather than sitting in a crowd and watching other people. Nevertheless it is a "place of ... entertainment" as the term is construed by Daniel, because people play video games in order to amuse themselves and pass the time agreeably. The evil addressed by the statute, in this instance, is segregation of places to which people resort for entertainment. People go to and remain in stores that have video games, in order to play them. Based upon Daniel, we reject the narrower ejusdem generis construction of "place of ... entertainment" in 42 U.S.C. § 2000a(b)(3) which would limit it to places more like "motion picture house," etc.
 
 
 15
 The defendants argue that because the video games were a peripheral, as opposed to the principle or even a substantial, part of the store's business, the store as a whole cannot properly be considered a "place of ... entertainment." The 7-11 was a convenience store with a couple of video games, not a game arcade which also sold some packaged convenience items. This argument is not resolved by Daniel, because the amusement area in Daniel was nothing but an amusement area.
 
 
 16
 We conclude that it makes no difference whether the games were a substantial or insubstantial part of the store's business. Subsection 2000a(b)(2) covers "any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment." Use of the word "principally" in subsection (b)(2) shows that Congress directed its attention to the issue of principal and peripheral uses, and required a principal use only in subsection (b)(2). We note also that subsection 2000a(b)(4)(A)(2) adds to the list of public accommodations any establishment "within the premises of which is physically located any such covered establishment." This provision shows a congressional intent to integrate entire premises which would not be public accommodations, but for covered establishments on their premises.
 
 
 17
 The only other circuit to have considered this issue reached the same conclusion. United States v. DeRosier, 473 F.2d 749 (5th Cir.1973). That case involved a neighborhood bar with a juke box, shuffle board game, and pool table, generating three percent of the bar's revenue. The dissenter in that case pointed out the same anomaly as the district judge in the case at bar, "a bar in which one may engage in such pleasant diversions as drinking beer or wine, bantering lightly or commiserating lachrymosely with friends and bartender, and even lifting voice in song, is only a bar. But put a nickel in the nickelodeon or the pinball machine, and the bar becomes something else." Id. at 755. The majority nevertheless held that a quantitative measure of the significance of the entertainment devices to the general facility could not be read into the statute, under a literal interpretation of the words, and because of the statutory "purpose as our lodestar," which was "eliminating the affront and humiliation involved in discriminatory denials to facilities ostensibly open to the general public." Id. at 751.
 
 
 18
 Nor does it matter that the franchiser did not intend the franchisees to operate the stores as places of entertainment. Whether he was supposed to or not, the operator put in two game machines, which could have no purpose other than to exchange amusement for coins on the premises of the store.
 
 
 19
 It is not arbitrary that classification of the store as a place of entertainment should depend on whether the two games are present or absent. Presence or absence of the video games probably would change the way customers used the store. People are less likely to stay in a store and talk to each other, if there is nothing to do there but buy convenience food and sundries, than if there are games to play.
 
 
 20
 Each side has cited snippets of legislative history in support of its preferred interpretation. As is often the case, the legislative history is more indeterminate in its meaning than the statute itself.
 
 
 21
 [N]ot the least of the defects of legislative history is its indeterminacy. If one were to search for an interpretive technique that, on the whole, was more likely to confuse than to clarify, one could hardly find a more promising candidate than legislative history.
 
 
 22
 Conroy v. Aniskoff, 507 U.S. 511, 519, 113 S.Ct. 1562, 1567, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring). This indeterminacy is probably systemic. Opponents of a position would reasonably use less of their political capital to keep that position out of the legislative history, than to keep it out of the statute.
 
 
 23
 The public accommodations provision of the Civil Rights Act of 1964 cured a great evil. Prior to the statute, many establishments generally open to the public discriminated against blacks, or Jews, or Indians, or any number of other groups, based on their race, color, religion, and national origin. This established public badges of inferiority for the excluded groups, marking them as of lower social status. It also caused numerous practical problems, as for black people trying to drive from Washington, D.C. to New York, yet unable to stop for a hamburger and to go to the bathroom on the then long drive. In response to almost a decade of massive demonstrations, freedom rides, and sit-ins, which swayed public opinion throughout the nation, Congress used its power under the Commerce Clause to eliminate segregation of public accommodations. There is no reason to read this statutory prohibition narrowly.
 
 
 24
 In this case, the store was not charged with any discrimination. But the alleged white supremacist gang was charged with using violence to prevent blacks and Hispanics from enjoying the use of the store, because of their race or national origin. The store was not merely a vender of goods, but also a supplier of entertainment by means of video games. If the charges are proved, then the conduct was of the kind Congress prohibited in this statute.
 
 
 25
 REVERSED and REMANDED.