**Laroi D. JACKSON, SR., Plaintiff,**

v.

**ABC LIQUORS, Defendant.**

**No. 96–644–CIV–T–24(A).**

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 10, 1997.

Mark S. Kamleiter, Law Office of Mark S. Kamleiter, St. Petersburg, FL, for Plaintiff.

John F. Bennett, Fishback, Dominick, Bennett, Stepter, Ardaman, Ahlers & Bonus, Orlando, FL, for Defendant.

## ORDER

BUCKLEW, District Judge.

This cause comes before the Court for consideration of the following motions:

(i) Defendant's Motion to Dismiss or Strike Plaintiff's Claim for Compensatory and Punitive Damages (Doc. No. 38, filed July 29, 1997); and

(ii) Defendant's Motion for Summary Judgment (Doc. No. 40, filed July 29, 1997).

---

1. Section 562.11, Florida Statutes (1995), prohibits the sale of alcoholic beverages to anyone under 21 years of age. Defendant claims it generally takes the added precaution of carding any customer who looks like he or she is under age

Plaintiff filed responses to both motions on August 8, 1997 (Doc. Nos. 42 and 43).

Plaintiff Laroi D. Jackson, a black male, commenced this action pro se on April 2, 1996 (Doc. No. 1), alleging that Defendant ABC Liquors refused to sell him and two other black men alcoholic beverages on the basis of their race, in violation of Plaintiff's "civil rights, protected under the federal constitution."

The underlying facts and circumstances are fairly simple and, for the most part, not in dispute. Plaintiff alleges that on April 7, 1995, he and two friends (Stacey Parrish and Calvin Holmes) entered Defendant's store and tried to purchase a bottle of vodka and some orange juice. The cashier, Tom Perkins, "carded" Plaintiff and his friends, that is he requested that all three individuals provide a valid drivers license or similar means of identification to prove each was of legal drinking age. Plaintiff and his companions questioned why all three of them needed to show an I.D., and Mr. Perkins told them it was Defendant's policy to card any customer (and any individual accompanying such customer) who looked as though he or she were under age 30.[1]

The parties disagree on what happened next. According to Plaintiff's deposition testimony, Plaintiff and his companions each showed Mr. Perkins proper identification, but Mr. Perkins nevertheless refused to sell them any alcohol. Deposition of Laroi Jackson (Doc. No. 47, filed August 11, 1997) (hereinafter "Jackson Deposition"), p. 35. According to Plaintiff, he and his companions witnessed Mr. Perkins selling alcoholic beverages to groups of white customers, some of which looked like they were under age 30, without carding anyone. Id., pp. 32, 37. Plaintiff claims that although the two police officers who subsequently arrived verified that Plaintiff and his companions were of legal drinking age and relayed this fact to Mr. Perkins, Mr. Perkins steadfastly refused to sell them anything. Id., p. 36.

30 and of carding all individuals accompanying the customer. According to Defendant, its carding policy is published on placards made visible on the door of the liquor store and at the checkout counter.

In contrast, according to Mr. Perkins' deposition, only Mr. Parrish showed his I.D. Deposition of Myles Thompson Perkins (Doc. No. 46, filed August 11, 1997) (hereinafter "Perkins Deposition"), p. 23–25. According to Mr. Perkins, neither Plaintiff nor Mr. Holmes offered their I.D.s. *Id.* Indeed, according to Mr. Perkins, one of the two said he did not have an I.D., and the other said he was under 21. *Id.* Mr. Perkins claims that he called the police when Plaintiff and his companions refused to leave and denies that the police ever told him that Plaintiff and/or his companions were of legal drinking age. *Id.*, p. 27.

## I. Construction of Complaint

Before this Court can proceed, it must first engage in a construction of Plaintiff's complaint. Plaintiff filed his complaint pro se on April 2, 1996. The complaint does not indicate a basis for relief, other than the federal constitution, and does not contain a prayer for relief. In subsequent pleadings, the parties have suggested several bases for relief. Defendant argues that Plaintiff's relief is limited to Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.*, as amended.[2] In response, Plaintiff argues that Defendant's actions violated the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, as amended.[3]

Similar public accommodations cases have entertained claims under all three provisions. *See, e.g., Perry v. Burger King Corp.*, 924 F.Supp. 548 (S.D.N.Y.1996) (court dealt separately with claims under § 1981, § 1982, and § 2000a); *White v. Denny's, Inc.*, 918 F.Supp. 1418 (D.Colo.1996) (court dealt separately with claims under § 2000a and § 1981); *Jackson v. Tyler's Dad's Place, Inc.*, 850 F.Supp. 53 (D.D.C.1994) (same); *Robertson v. Burger King, Inc.*, 848 F.Supp. 78 (E.D.La.1994) (court construes § 1983 claim as claims under § 1981 and § 2000a); *Bermudez Zenon v. Restaurant Compostela, Inc.*, 790 F.Supp. 41 (D.P.R.1992) (court denies motion to dismiss § 1981 claim and grants leave to add § 2000a claim).

The Court therefore construes Plaintiff's complaint as seeking relief under § 1981, § 1982, and § 2000a. Plaintiff has also made clear, in subsequent pleadings, his intention to seek compensatory and punitive damages for the alleged violation of § 1981 and of § 1982. The Court therefore construes Plaintiff's complaint as requesting this relief, as well as any other remedy (including injunctive relief, costs and attorneys fees) available at law.

## II. Motion for Summary Judgment

Defendant moves for summary judgment on the grounds that Plaintiff has failed to make out a prima facie case of discrimination, and, in the alternative, has failed to rebut the legitimate, nondiscriminatory reason proffered by Defendant for its refusal to sell alcohol to Plaintiff.

---

**2.** Section 2000a provides in pertinent part:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

Defendant concedes that the liquor store at which Plaintiff was refused service constitutes a place of public accommodation within the purview of § 2000a.

**3.** Section 1981 provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of the laws and proceedings for the security of persons and

property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

Section 1982 provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

The Court notes that Defendant has not contested the applicability of § 1981 to a retail purchase. *Compare Perry v. Burger King Corp.*, 924 F.Supp. 548 (S.D.N.Y.1996) (court found plaintiff "contracted for" food and use of bathroom facilities within § 1981's "contracts" clause), *with Bermudez Zenon v. Restaurant Compostela, Inc.*, 790 F.Supp. 41 (D.P.R.1992) (while a refusal to seat a customer does not constitute a violation of § 1981's "contracts" clause, it does fall within the section's "equal benefits" clause).

## A. Summary Judgment Standard

The Eleventh Circuit discussed the standard for granting summary judgment in *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (1993), *reh'g and reh'g en banc denied*, 16 F.3d 1233 (11th Cir.1994):

> Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

*Hairston*, 9 F.3d at 918. The Eleventh Circuit recognized the seminal case concerning summary judgment, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), by highlighting the following passage:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Id.* at 918. In conclusion, the Eleventh Circuit outlined the parties' respective burdens and the ruling court's responsibilities:

> The party seeking summary judgment bears the initial burden to demonstrate to the district court the basis for its motion for summary judgment and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show an absence of any genuine issue of material fact. *Taylor v. Espy*, 816 F.Supp. 1553, 1556 (N.D.Ga. 1993) (citation omitted). In assessing whether the movant has met this burden, the district court must review the evidence and all factual inferences drawn therefrom, in the light most favorable to the non-moving party. *Welch v. Celotex*, 951 F.2d 1235, 1237 (11th Cir.1992); *Rollins v.*

> *TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987). If the movant successfully discharges its burden, the burden then shifts to the non-movant to establish, by going beyond the pleadings, that there exist genuine issues of material fact. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*[,] 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

> Applicable substantive law will identify those facts that are material. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. *Id.* For factual issues to be considered genuine, they must have a real basis in the record. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56. It is not part of the court's function, when deciding a motion for summary judgment, to decide issues of material fact, but rather determine whether such issues exist to be tried. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11. The Court must avoid weighing conflicting evidence or making credibility determinations. *Id.* at 255, 106 S.Ct. at 2513–14. Instead, "[t]he evidence of the non-movant is to be believed in his favor." *Id.* Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir. 1989) (citation omitted).

*Id.* at 918–19. *See Mulhall v. Advance Sec. Inc.*, 19 F.3d 586, 589–90 (11th Cir.1994); *Howard v. BP Oil Co.*, 32 F.3d 520, 523–24 (11th Cir.1994).

## B. Public Accommodations Standards

The parties concede that at the summary judgment stage, Plaintiff may use the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The Eleventh Circuit described the

application of the *McDonnell Douglas* test to a § 1981 claim [4] in *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 949 (11th Cir.1991), a case where the defendant allegedly discriminated against the plaintiff by rejecting the plaintiff's contract bid for a Honda dealership:

> Under the familiar *McDonnell Douglas/Burdine* framework, the court employs a three part test designed to determine the motivation of the defendant in taking the challenged action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The initial burden rests with the plaintiff to demonstrate by a preponderance of the evidence a prima facie case of discrimination. *Id.* at 252–53, 101 S.Ct. at 1093–94. This burden is not onerous, *id.* at 253, 101 S.Ct. at 1094, and can be met by simply demonstrating that the plaintiff is a member of a minority group, that he submitted an application or bid which met the requirements for an available contract, that the application or bid was ultimately rejected, and that the contract was eventually given to an individual who is not a member of a protected class. *Patterson v. McLean Credit Union,* 491 U.S. 164, 187, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132, 157 (1989); *Zaklama v. Mount Sinai Medical Center,* 842 F.2d 291, 293 (11th Cir.1988). Thereafter the defendant must come forward with evidence demonstrating legitimate nondiscriminatory reasons for its conduct. *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. It is important to note that the burden on the defendant is one of production not persuasion. *Id.* at 254–55, 101 S.Ct. at 1094–95; *Eastland v. Tennessee Valley Authority,* 704 F.2d 613, 618–19 (11th Cir., 1983). Once the defendant satisfies this obligation, it is incumbent on the plaintiff to produce evidence suggesting that those reasons are merely a pretext, the real reason for the action having been

based on race. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

*Brown,* 939 F.2d at 949–50; *see also Evans v. Holiday Inns, Inc.,* 951 F.Supp. 85, 89 (D.Md.1997) (applying Title VII *McDonnell Douglas* cases to public accommodations case).

In the present case, meeting the legal requirement (the drinking age) is equivalent to meeting the bid requirements for an available contract in *Brown.* Defendant's facially neutral enforcement policy (the practice of carding all customers (and any individuals accompanying them) who appear to be under 30) is Defendant's proffered nondiscriminatory reason for not serving Plaintiff. *See also Franceschi v. Hyatt Corp.,* 782 F.Supp. 712 (D.P.R.1992) (viable § 1981 and § 2000a case made where facially neutral visitor policy was allegedly used to deny access on basis of race).

## C. Analysis

 In the present case, it is not necessary for the Court to assess Plaintiff's prima facie case because Defendant has failed to meet its initial burden of demonstrating the basis for its motion for summary judgment. The evidence that Defendant points to, when viewed in the light most favorable to Plaintiff, does not show the absence of a genuine issue of material fact. Defendant argues that after Mr. Perkins explained that he needed to see the I.D.s of all three individuals (Plaintiff, Mr. Parish, and Mr. Holmes), Plaintiff stated he was not of legal drinking age. As a result of Plaintiff's admission, Mr. Perkins refused to sell them the vodka.

Defendant neglects to point out, however, that the very deposition testimony submitted by Defendant in support of its motion also contains an assertion by Plaintiff (i) that he was "joking" about being under age, Jackson Deposition, p. 35, (ii) that he showed his I.D. to Mr. Perkins, *id.,* (iii) that he witnessed Mr. Perkins selling alcohol to groups of white customers who did not appear to be 30 years old and who were not carded by Mr. Perkins, *id.,* pp. 32, 37, (iv) that the police verified that Plaintiff was of legal drinking age and relayed this information to Mr. Perkins, *id.,*

---

4. This approach applies with equal force to the claims brought under § 1982 and § 2000a. *See, e.g., Hornick v. Noyes,* 708 F.2d 321 (7th Cir. 1983) (§ 2000a cases are governed by same burden shifting rules as § 1981).

p. 36, and (vi) that Mr. Perkins nevertheless refused to sell Plaintiff anything, *id.* Since Plaintiff's testimony is completely at odds with Mr. Perkins' testimony, genuine issues of material fact preclude summary judgment.

Even if Defendant had satisfied its initial burden, the facts set forth above (when viewed in the light most favorable to Plaintiff) clearly make out a prima facie case of discrimination.[5] Moreover, the possibility that a jury may find Plaintiff's version of the facts more credible than Mr. Perkins' version also permits a finding of pretext. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997) (main question is whether the plaintiff has "cast sufficient doubt" to permit a reasonable factfinder to conclude that the defendant's legitimate nondiscriminatory reasons are "unworthy of credence.... [T]he court may not preempt the jury's role of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the [defendant's] explanations for its action.")

Defendant's motion for summary judgment is therefore denied.[6]

### III. Motion to Strike Compensatory and Punitive Damages.

■ As noted in Section I above, the Court liberally construes Plaintiff's complaint as requesting relief under § 1981, § 1982 and § 2000a, and as seeking compensatory and punitive damages, as well as any other remedy (*e.g.*, injunction) available at law.

Relief under § 2000a is limited to injunction, costs and attorneys fees. *See Newman v. Piggie Park Enterprises, Inc.*, 390 U.S.

400, 401, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Section 2000a–6(b) provides:

> The remedies provided in this subchapter shall be the exclusive means of enforcing the rights based on this subchapter, but nothing in this subchapter shall preclude any individual or any State or local agency from asserting any right based on any other Federal or State law not inconsistent with this subchapter, including any statute or ordinance requiring nondiscrimination in public establishments or accommodations, or from pursuing any remedy, civil or criminal, which may be available for the vindication or enforcement of such right.

The question therefore becomes: Does the limitation of remedies expressed in § 2000a–6(b) also limit the remedies which can be obtained from corresponding §§ 1981 and 1982 claims.

The Supreme Court addressed the relationship between § 2000a and other civil rights laws in *United States v. Johnson*, 390 U.S. 563, 88 S.Ct. 1231, 20 L.Ed.2d 132 (1968) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). In *Johnson*, the Supreme Court held that while the exclusive remedy provision expressed in § 2000a–6(b) prevented the criminal prosecution (under § 241) of proprietors who refused to serve or admit a person in violation of § 2000a, the exclusive remedy provision did not preclude the criminal prosecution of "outsiders" (i.e., persons who were not proprietors) who prevented a person from exercising a right to equal service under § 2000a.

In doing so, the Supreme Court stated:

---

5. The Court notes that Plaintiff's response to Defendant's motion for summary judgment does not refer this Court to any record evidence, but instead rests on Plaintiff's allegations in the complaint. Plaintiff misperceives the appropriate standard at summary judgment. A non-movant, in responding to motion for summary judgment, must show, *by going beyond the pleadings*, the existence of a genuine issue of material fact. Had this Court found that Defendant had satisfied its initial burden, the Court would have also found Plaintiff's response insufficient.

6. The Court emphasizes that nothing in this order is intended to suggest that individuals have a civil right to be free from carding or a constitu-

tional right to under age drinking. Indeed, the Court believes that discriminatory carding, in and of itself, is not sufficient to rise to the level of a violation of the civil rights laws. *See, e.g., White v. Denny's, Inc.*, 918 F.Supp. at 1429 (no right to "preferential seating"); *Robertson v. Burger King, Inc.*, 848 F.Supp. at 81 (no right to first-come first-serve service); *Stearnes v. Baur's Opera House, Inc.*, 788 F.Supp. 375, 377–78 (C.D.Ill.1992) (no right to be free from music selections designed "to keep blacks out"). What makes Plaintiff's claims cognizable under §§ 1981, 1982 and 2000a is the possibility that Defendant (i) has refused to serve Plaintiff on the basis of race, and (ii) has used its facially neutral carding policy as a pretext to deny such service.

[A]s we read the Act, the exclusive-remedy provision of [§ 2000a] was inserted *only to make clear that the substantive rights to public accommodation defined in [§ 2000a] are to be enforced exclusively by injunction.* Proprietors and owners are not to be prosecuted criminally for mere refusal to serve Negroes. But the Act does not purport to deal with outsiders; nor can we imagine that Congress desired to give them a brand new immunity from prosecution under [§ 241]. . . .

*Johnson,* 390 U.S. at 566–67, 88 S.Ct. at 1234 (emphasis in original) (citations omitted).

Similarly, in *Adickes,* the Supreme Court noted that the exclusive remedy provision in § 2000a prevents its use as an underlying basis for a civil action under § 1983:

Congress deliberately provided no damages remedy in the Public Accommodations Act itself, and [§ 2000a–6(b) ] provides that the injunction remedy of [§ 2000a] was the "exclusive means of enforcing the rights based on this title." Moreover, the legislative history makes quite plain that Congress did not intend that violations of the Public Accommodations Title be enforced through the damages provisions of § 1983. See 110 Cong. Rec. 9767 (remark of floor manager that the language of [§ 2000a–6(b) ] "is necessary because otherwise it . . . would result . . . in civil liability for damages under 42 U.S.C. § 1983"); see also 110 Cong.Rec 7384, 7405.

*Adickes,* 398 U.S. at 150 n. 5, 90 S.Ct. at 1605 n. 5.

To be precise, these cases only address the question of whether § 2000a (the remedy for which is expressly limited to injunction, costs and fees) can serve as the basis of a civil or criminal action (such as § 241 or § 1983) that requires an underlying constitutional or statutory violation. *See Adickes,* 398 U.S. at 150 n. 5, 90 S.Ct. at 1605 n. 5 ("we do think it clear that there can be recovery under § 1983 for conduct that violates the Fourteenth Amendment, even though the same conduct might also violate the Public Accommodations Title which itself neither provides a damages remedy nor can be the basis of a § 1983 claim").

Nevertheless, the Court believes *Johnson* and *Adickes* implicitly recognize that § 2000a created substantive rights to equal treatment in public accommodations which were not, prior to the enactment of § 2000a, in existence, and that Congress intended to limit the enforcement of these newly created substantive rights to the remedies set forth in § 2000a. *See Bermudez Zenon,* 790 F.Supp. at 45 (allowing claims under both § 1981 and § 2000a, but noting that plaintiff will be unable to recover damages); *Bray v. RHT, Inc.,* 748 F.Supp. 3, 5 (D.D.C.1990) (citing *Adickes* and *Johnson* to hold that exclusive remedy provision in § 2000a applies to § 1981 action); *see also Tillman v. Wheaton–Haven Recreation Ass'n, Inc.,* 451 F.2d 1211, 1214 & n. 5, *rev'd on other grounds* 410 U.S. 431, 93 S.Ct. 1090, 35 L.Ed.2d 403 (1973) (holding that § 2000a's private club exemption acts as an implicit exception to § 1981 and § 1982 actions—"it is unquestionable that in 1964 Congress acted in the belief that in outlawing discrimination in public accommodations, it was writing on a clean slate.").

The Court therefore concludes that the exclusive remedy provision contained in § 2000a–6(b) implicitly limits the recoverability of damages for violations of § 1981 and § 1982 where the claim alleged essentially amounts in substance to a violation of § 2000a.

Defendant's Motion to Strike Compensatory and Punitive Damages is therefore granted.

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

(a) Defendant's Motion for Summary Judgment (Doc. No. 41) is **DENIED.**

(b) Defendant's Motion to Strike Compensatory and Punitive Damages (Doc. No. 38) is **GRANTED.**