Rachael Balint WIECZOREK
and Jermald Wieczorek,
Plaintiffs,

v.

RED ROOF INNS, INC., Defendant.

No. 96–CV–1811.

United States District Court,
N.D. New York.

April 22, 1998.

Allen Johnson & Lonergan, LLP, Albany, NY (Michael J. Lonergan, of counsel), for Plaintiffs.

Ogletree, Deakins, Nash, Smoak & Stewart, P.C., Albany, NY (Franklin H. Goldberger, of counsel), for Defendant.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

This is an action alleging discrimination in public accommodations in violation of 42 U.S.C. §§ 1981 and 1982. Plaintiffs also bring state law claims. Defendant now moves for summary judgment, and plaintiffs cross-move for the same relief.

## I. BACKGROUND

### A. Facts

On June 4, 1996, Christine Hislop called defendant Red Roof Inns, Inc.'s ("Red Roof") Central Reservation System to make a hotel reservation for her daughter, plaintiff Rachael Balint Wieczorek ("Rachael"), and her

1. Plaintiffs have since married, and Rachael now goes by her name as it appears in the caption.

2. Guaranteed reservations are held for late arrival, i.e., after 6 p.m. Non-guaranteed reservations

daughter's then-fiancé, plaintiff Jermald Wieczorek ("Jermald").[1] Both plaintiffs are black. The reservation was for June 5, 1996 at the Red Roof located in Southborough, Massachusetts. Hislop knew the plaintiffs would be checking into the hotel room after 6 p.m. on the evening of the 5th because all three would be attending a party earlier in the evening.

Hislop called Red Roof sometime during the evening of the 4th. According to Hislop, she made a single reservation under the name Balint and the name Wieczorek, and spelled both names for the person taking the reservation. Hislop Dep. at 14. She also guaranteed the reservation with her credit card. *Id.* at 15; Hislop Aff. ¶ 8.[2]

Relying on its employees' interpretation of computer records generated both at the Central Reservation System and the Red Roof in Southborough, defendant offers a more circuitous version of the events surrounding the making of the reservation. At approximately 9:45 p.m. on the evening of June 4th, 1996, Hislop made a non-guaranteed reservation in the name "Wieczorek" for June 5th. She then canceled the reservation three minutes later, and immediately made another reservation in the name of "Balint," which she initially did not guarantee, then changed to guaranteed, changed back to non-guaranteed, and changed back to guaranteed one last time. *See* Def.Ex. C, E; Deposition of Red Roof Customer Service Director Cindy Butin ("Butin Dep.") at 43–50; Deposition of Red Roof Night Auditor Barry Ross ("Ross Dep.") at 25–27. Hislop denies canceling any reservation. Hislop Dep. at 14.

Hislop was given a confirmation number for a guaranteed reservation. Hislop Aff. ¶ 10. The next day (June 5th) she passed this number on to plaintiffs as the three were leaving the party. *Id.* Plaintiffs arrived at the Red Roof in Southborough at approximately 9:30 p.m. on the evening of the 5th. Red Roof employee Joseph Varghese was the front desk clerk on duty when plaintiffs arrived

are just that: there is no guarantee that you will have a reservation if you arrive after 6 p.m. *See* Def. Rule 7.1(f) Stat. ¶ 3.

rived. One or both of the plaintiffs told Varghese they had a reservation and gave the names Wieczorek and Balint. Rachael Dep. At 21; Jermald Dep. at 14. Varghese then punched two keys on his computer, and told plaintiffs the reservation had been canceled at 6 p.m. that day. Rachael Dep. at 21; Jermald Dep. at 14. Plaintiffs then offered the confirmation number, which Varghese told them was of no use. Jermald Dep. at 14. Jermald then told Varghese he could pay in cash, to which Varghese responded that he couldn't accept cash, that "cash was no good." Id. at 15. Finally, Jermald asked if they could get another room; Varghese told them the hotel was booked. Id. at 16; Rachael Dep. at 22. Plaintiffs then left the hotel. The entire conversation lasted no longer than ten minutes.

Red Roof's procedures mandate that a desk clerk check both names when a guest offers two names in the alternative as the name for a reservation. Butin Dep. at 96. The same procedures also dictate that a desk clerk check a confirmation number when offered by a guest. Id. Red Roof's computer records indicated that on the night of June 5, 1997, all the rooms at the Southborough Red Roof were booked and occupied except one room that was reserved and guaranteed in the name of Balint. That reservation was canceled at 3:15 a.m. on June 6, 1997. Def. Ex. E.

The next day, plaintiffs told Hislop what happened. Hislop contacted the Red Roof in Southborough and spoke with Gisela Resendes, a Red Roof employee. Resendes Dep. at 12–13. Hislop clarified with Resendes that she had followed the correct procedure for making a guaranteed reservation when she made the reservation for her son and daughter-in-law. Hislop Dep. at 22–23; Resendes Dep. at 30. Resendes then referred Hislop to Susan Morrissey, the Southborough Red Roof manager. Hislop Dep. at 25. Resendes also left a message for Morrissey concerning the incident, asking her to phone Hislop. Resendes Dep. at 11.

Hislop spoke with Morrissey about the incident on June 7, 1996. Morrissey told Hislop she would speak with Varghese and call her back. Hislop Dep. at 37–38.

Morrissey spoke with Varghese about the incident on June 8, 1996. During this conversation, Morrissey disciplined Varghese for "inhospitable behavior toward guests" for his failure to assist plaintiffs in finding alternative accommodations. Morrissey Dep. at 47–48. She did not ask him whether he had checked the name "Balint" or whether plaintiffs gave the name "Balint" on the night in question. Id. at 56. Morrissey also disciplined Varghese regarding an unrelated incident involving Varghese hanging up on a customer during an exercise in which Morrissey listened in on a phone call designed to test whether Red Roof employees follow correct procedure. Id. at 51–52. When Morrissey told him she had listened to the phone call, Varghese initially denied hanging up, then indicated it was unintentional. Id. at 53. After Morrissey informed him of the disciplinary action, Varghese quit. Morrissey Dep. at 61.

Hislop and Morrissey spoke again on June 10, 1996. Morrissey told Hislop that she had caught Varghese "in lies" and that he had been terminated. Hislop Dep. at 49–50. Morrissey did not specify what Varghese had lied about, and Hislop did not ask. Id. at 50. The same day, Morrissey sent Rachael a letter that read, in pertinent part, as follows:

> Please accept my sincerest apologies for the events that occurred here recently. You and your family deserved 100% Guest Satisfaction and we failed to deliver it. I understand that there was an error made as you attempted to check in and can certainly understand why you would be disappointed with the lack of service you received. I truly hope that you will try Red Roof Inns again in the future.

Pl.Ex. E.

### B. Procedural History

Plaintiffs filed the present Complaint on November 15, 1996. The Complaint contains three counts. The first count alleges defendant violated the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982, and plaintiffs' Thirteenth Amendment rights by denying them equal access to public accommodations. The second count alleges the common law tort of "outrage," which the Court construes as a

claim for intentional infliction of emotional distress. The third count sounds in negligent hiring, training and supervision. In their opposition papers, plaintiffs have agreed to discontinue the intentional infliction of emotional distress claim.

Defendant now moves for summary judgment dismissing the complaint in its entirety. Plaintiffs oppose the motion and cross-move for summary judgment.

## II. DISCUSSION

### A. Defendant's Motion for Summary Judgment

#### 1. Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party. *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir.1975).

Once the moving party has met its burden, the non-moving party must come forward with specific facts showing there is a genuine issue for trial. *Matsushita*, 475 U.S. at 585–86. A dispute regarding a material fact is genuine "if evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is proper when reasonable minds could not differ as to the import of the evidence. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The motion will not be defeated by a non-movant who raises merely a "metaphysical doubt" concerning the facts or who only offers conjecture or surmise. *Delaware & Hudson Ry. Co. v. Consolidated Rail*, 902 F.2d 174, 178 (2d Cir.1990), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 125 (1991) (quoting *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348).

Our Circuit has noted that summary judgement in discrimination cases is to be granted cautiously when the defendant's intent and state of mind are placed at issue. *Rosen v. Thornburgh*, 928 F.2d 528, 533 (2d Cir.1991). Although the Court recognizes this general maxim, the Court also understands that the summary judgment rule would be rendered sterile if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion. *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985).

#### 2. Plaintiffs' Federal Claims

Section 1981 prohibits racial discrimination in the making and enforcement of private contracts. 42 U.S.C. § 1981; *Patterson v. McLean Credit Union*, 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Runyon v. McCrary*, 427 U.S. 160, 168, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). Section 1982 prohibits private racial discrimination in the sale or rental of real or personal property. 42 U.S.C. § 1982; *Runyon*, 427 U.S. at 170, 96 S.Ct. 2586. Claims of discrimination under either provision are analyzed at the summary judgment stage using the well-established burden-shifting analysis of *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Patterson*, 491 U.S. at 186, 109 S.Ct. 2363; *Chauhan v. M. Alfieri Co., Inc.*, 897 F.2d 123, 126 (3d Cir.1990); *Gold Star Taxi and Transportation Service v. Mall of America Co.*, 987 F.Supp. 741, 745 (D.Minn.1997); *Jackson v. ABC Liquors*, 983 F.Supp. 1388, 1391 (M.D.Fla.1997).

Under the burden-shifting analysis, plaintiffs have the initial burden to establish a prima facie case of discrimination. If they do so, the burden of production shifts to defendant to articulate, " 'through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause" of the incident. *St. Mary's Honor Center v. Hicks*, 509

U.S. 502, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (quoting *Burdine,* 450 U.S. at 255, 101 S.Ct. 1089). If defendant does so, the presumption of discrimination arising from plaintiffs' prima facie case "drops out of the picture." *Hicks,* 113 S.Ct. at 2749. Plaintiffs are then required to show that defendant's proffered reasons are pretextual and that intentional racial discrimination occurred. *See id.; Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. Throughout this sequence of proof, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff[s] remains at all times with the plaintiff[s]." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

■ For purposes of its summary judgment motion, defendant concedes that plaintiffs have stated a prima facie case of discrimination. Defendant argues, however, that it has proffered a legitimate, non-discriminatory reason for the incident, and that plaintiffs provide no evidence of pretext or intentional racial discrimination.

In support of its motion, defendant contends that plaintiffs were denied a room on the evening of June 5, 1996 because of confusion regarding their reservation resulting from computer and operator error. Defendants proffer the following evidence in support of this explanation: (1) the first, non-guaranteed reservation in the name of "Wieczorek" that was canceled immediately after it was made (Def.Ex. C); (2) the second reservation, under the name "Balint" that started as non-guaranteed, changed to guaranteed, changed back to non-guaranteed and finished as a guaranteed reservation (Def.Ex. C, E; Butin Dep. at 43–50; Ross Dep. at 25–27); (3) Varghese's checking of the "Wieczorek" reservation and finding it canceled (Morrissey Dep. 1 at 42; Morrissey Dep. 2 at 22). Based on this evidence, defendant argues

> [t]he reasonable inference is that, having found the reservation under the name of "Wieczorek," the first name offered to him by the Plaintiffs, Mr. Varghese saw no reason to check for another, second reservation in the name of "Balint."

This argument, however, is sheer speculation. Though it is clear that there existed a canceled reservation under the name "Wieczorek," defendant's proffered explanation does not explain the guaranteed "Balint" reservation or Varghese's refusal to check the confirmation number. Two undisputed facts are crucial on this point. First, defendant concedes that upon arriving at the front desk, plaintiffs offered Varghese the names "Wieczorek" and "Balint" and the confirmation number for the "Balint" reservation. Def. Rule 7.1(f) Stat. ¶ 8. Second, Red Roof procedures mandate that a desk clerk check both names when two are given and also check a confirmation number when offered. Morrissey also gave the following testimony at her deposition:

> Q. But if a customer who believes that they did have a reservation had been told it was cancelled [sic] and if they said to the reservations clerk, "Well, we have a confirmation number," what would you expect your clerk to do under those circumstances?
>
> A. I would expect them to at least look it up just to confirm that it was cancelled [sic], if anything, to confirm that. If it was given to them, I would expect them to look it up out of courtesy to show they were trying to help the person.

Morrissey Dep. at 132–33. Thus, defendant's proffered explanation neglects to explain, or even address, Varghese's failure to follow Red Roof procedures.

Moreover, defendant offers no admissible evidence that Varghese checked *either* name. Varghese apparently was not deposed in this action; consequently, there is no evidence that he checked the name "Wieczorek" on the evening of the incident and found the canceled reservation. Morrissey's testimony as to what Varghese told her is inadmissible hearsay, and therefore will not be considered in support of defendant's summary judgment motion. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 65 (2d Cir.1997) ("only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment"). Morrissey's notes of her conversation with Varghese, which defendant argues are admissible as business records, *see* F.R.E. 803(6), are not probative of defendant's proffered explanation. The notes re-

flect that Varghese claimed he could not find the reservation under "the name [plaintiffs] gave." Def.Ex. K.[3]

Thus, the only evidence defendant offers in support of its explanation is the record of the canceled Wieczorek reservation. This record, standing alone, would not permit the conclusion that there was a non-discriminatory reason for the incident. *See Hicks,* 113 S.Ct. at 2748. As such, defendant has failed to demonstrate the absence of a fact issue in this respect, and summary judgment accordingly is denied as to plaintiffs' federal claims.

### 3. Plaintiffs' State Law Claim

■ Defendant next argues that it is entitled to summary judgment on plaintiffs' claim that it was negligent in the hiring, training and supervising of Varghese.

As to the claim that Varghese was negligently trained, defendant has met its initial burden on summary judgment to show the absence of a factual issue in this regard. Nothing in the record suggests Varghese was inadequately trained. Moreover, plaintiffs fail to provide any evidence of a lack of adequate training. Accordingly, summary judgment is granted as to this claim.

As to plaintiffs' claims that defendant negligently hired and supervised Varghese, these claims must be dismissed as well. Plaintiffs provide no evidence that defendant had any notice or knowledge of any discriminatory propensity on Varghese's part. *See Kenneth R. v. Roman Catholic Diocese of Brooklyn,* 229 A.D.2d 159, 654 N.Y.S.2d 791, 793 (2d Dep't), *cert. denied,* — U.S. —, 118 S.Ct. 413, 139 L.Ed.2d 316, *leave to appeal dismissed,* 91 N.Y.2d 848, 667 N.Y.S.2d 683, 690 N.E.2d 492 (1997).

For these reasons, and because plaintiffs have agreed to discontinue their claim for intentional infliction of emotional distress, plaintiffs' pendent state law claims are dismissed in their entirety.

### B. Plaintiffs' Cross–Motion for Summary Judgment

■ Plaintiffs cross-move for summary judgment. The motion is based on: (1) defendant's concession that plaintiffs have stated a prima facie case of discrimination; and (2) defendant's failure to provide a legitimate, non-discriminatory explanation for the incident. The cross-motion must be denied.

Defendant conceded the existence of a prima facie case *only for the purpose of its summary judgment motion. See* Def.Mem. Of Law at 14. Whether plaintiffs in fact have sufficient evidence to support a prima facie case otherwise remains in dispute. Accordingly, plaintiffs' cross-motion is denied.

### III. CONCLUSION

In sum, defendant's motion for summary judgment is **DENIED** as to plaintiffs' federal claims and **GRANTED** as to plaintiffs' pendent state law claims. Plaintiffs' cross-motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

---

**3.** This statement is, in fact, inconsistent with defendant's explanation. Defendant claims Varghese found the reservation under the name plaintiffs gave, but that it was canceled. According to Morrissey's notes, Varghese found no reservation at all under the name given.